UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

NASSIF SAMI DAHER D-2

       Defendant.
_____/

Case No. 18-20559

Honorable Nancy G. Edmunds

**ORDER ON DEFENDANT'S MOTION TO DISCOVER
AND MOTION TO DISMISS [28] [43]**

In this criminal case, Defendant is charged with four counts of wire fraud in violation of 18 U.S.C. §§ 1343, 2. The charges relate to allegations of food stamp fraud. On September 12, 2018, the Government provided notice to Defendant and the Court that it intends to offer into evidence, or otherwise use or disclose information that was obtained or derived from electronic surveillance conducted under the Foreign Intelligence Surveillance Act ("FISA"). (ECF No. 21.)

After receiving this notice, Defendant filed two related motions that are currently pending before the Court: Defendant's motion for discovery of evidence (ECF No. 28) and Defendant's motion to dismiss his indictment (ECF No. 43). Defendant argues the Government's use of FISA materials in this case is improper, and he seeks discovery and suppression of the materials, and ultimately dismissal of the charges against him. The Government opposes the motions. As discussed below, the Court conducted an *ex parte* and *in camera* review of the FISA materials as required by 50 U.S.C. § 1806(f). Having completed its review and having considered the entire record in this matter as well as the

1

relevant statutory and legal authorities, the Court finds that Defendant's motions should be **DENIED**.

## I. BACKGROUND

On August 14, 2018, a grand jury in the Eastern District of Michigan returned an indictment charging Defendant and a co-defendant with multiple counts of wire fraud in violation of 18 U.S.C. §§ 1343, 2. The indictment accuses Defendant and his co-defendant of engaging in a scheme to obtain Supplemental Nutrition Assistance Program funds by fraudulent means. The indictment identifies fourteen allegedly fraudulent wire transfers related to this scheme, and Defendant is alleged to have been involved with at least four of those transfers.[1]

On September 12, 2018, the Government provided notice pursuant to 50 U.S.C. § 1806(c) of its intent to offer into evidence or otherwise use information obtained or derived from electronic surveillance conducted pursuant to the Foreign Intelligence Surveillance Act of 1978 ("FISA" or "the Act"). Thereafter, Defendant filed the instant motion seeking, among other things, disclosure and then suppression of the FISA materials.[2]

Defendant was born in Michigan and is an American citizen. He is of Lebanese descent, meaning his ethnic heritage is Lebanese. He claims he is not an agent of a foreign power. And as he points out, he has not been charged with a crime related to national security or terrorism. To this end, Defendant contends the use of FISA materials is improper in the criminal prosecution of an American citizen for an entirely "domestic" criminal prosecution. He also claims that the FISA warrants at issue here were improper

---

[1] On December 6, 2018, Defendant's co-defendant pled guilty to one count of wire fraud, and on April 18, 2019 he was sentenced to one year and one day in prison.

[2] Defendant also filed a motion seeking dismissal of the indictment, which in turn relies on suppression of the FISA materials.

2

because in his view, the primary purpose of the warrants and subsequent surveillance was for a domestic criminal prosecution.

## II. DISCUSSION

### A. Overview of FISA and the Role of the Court

The Foreign Intelligence Surveillance Act of 1978 (as previously defined, "FISA" or "the Act") prescribes the methods whereby the Government may conduct electronic surveillance and physical searches of a "foreign power" or "agent of a foreign power" after a high-ranking official certifies that a "significant purpose" of the search is to collect "foreign intelligence information."[3] If authorized by the United States Attorney General, information derived from FISA surveillance and searches may be used in subsequent criminal prosecutions. 50 U.S.C. §§ 1806(b) and 1825(c). The statute does not expressly limit the types of criminal prosecutions in which such information can be used. However, before the FISA materials may be introduced, the Government must provide notice to the court and to the party against whom the evidence will be introduced. 50 U.S.C. §§ 1806(c) and 1825(d).

After receiving notice that the Government intends to use FISA materials, the "aggrieved party"—the party against whom the surveillance or search was conducted—may move to discover and/or to suppress the evidence based on the grounds that: (1) the information was unlawfully acquired; or (2) the electronic surveillance or physical search did not conform to the order authorizing the action. 50 U.S.C. §§ 1806(e) and 1825(f).

---

[3] The role of FISA Courts and the process for obtaining search warrants under FISA is set forth in the statute, and discussed in significant detail in the Government's briefing as well as in the opinion of many other district courts. *See, e.g., United States v. Alwan*, No. 1:11-CR-13-R, 2012 WL 399154, at *1–11 (W.D. Ky. Feb. 7, 2012).

3

The motion must be made to the district court in which the matter is pending, and the district court has the jurisdiction to determine whether the surveillance or search was illegal or not in conformity with the order of the FISC. 50 U.S.C. §§ 1806(f) and 1825(g).

Once the district court receives a motion to discover or suppress FISA materials, the court may address the motion as it would in any other criminal case unless the Attorney General files an affidavit declaring that disclosure of the evidence or an adversarial hearing on the motion would harm the national security of the United States. 50 U.S.C. §§ 1806(f) and 1825(g).

If, as in the present case, the Attorney General files such an affidavit, the district court must "review in camera and ex parte the application, order, and such other materials relating to the surveillance [or physical search] as may be necessary to determine whether the surveillance [or physical search] of the aggrieved person was lawfully authorized and conducted." 50 U.S.C. §§ 1806(f) and 1825(g).  When reviewing the FISA materials *in camera* and *ex parte*, the district court may disclose the applications, orders, or other materials related to the surveillance or search to the aggrieved person "only where such disclosure is necessary to make an accurate determination of the legality of the surveillance [or search]." 50 U.S.C. §§ 1806(f) and 1825(g).

Accordingly, when a motion to suppress by the defendant is followed by the affidavit of the Attorney General, *in camera* and *ex parte* review of the FISA materials is the rule, and disclosure of any such evidence to the criminal defendant is the exception. *See United States v. Belfield*, 692 F.2d 141, 147 (D.C.Cir. 1982) ( "The language [of the FISA statutes] clearly anticipates that an ex parte, in camera determination is to be the rule. Disclosure and an adversary hearing are the exception, occurring only when

necessary.") Disclosure should only take place where the court is unable to make an accurate determination as to the legality of the evidence. *See United States v. Daoud*, 755 F.3d 479, 482 (7th Cir.), supplemented, 761 F.3d 678 (7th Cir. 2014) (discussing 50 U.S.C. 1806(f)). If the court can make an accurate determination without disclosure to the defendant, then the FISA materials should not be disclosed. *Id.*

**B. Standards of Review Applied to FISA Applications and Orders .**

When a Defendant's motion to suppress is followed by the Attorney General's affidavit requiring *in camera* and *ex parte* review, the district court must determine the legality of the FISA surveillance or search. The district court applies the following standards of review in conducting this analysis.

**1. Standard of Review Applicable to FISA Applications.**

A FISA application is subject only to minimal scrutiny upon review by the reviewing district court. *See United States v. Abu–Jihaad*, 630 F.3d 102, 130 (2d Cir. 2010). Where a statutory application "was properly made and earlier approved by a FISA judge, it carries a strong presumption of veracity and regularity in a reviewing court." *See United States v. Mohammad*, 339 F. Supp. 3d 724, 736 (N.D. Ohio 2018). When reviewing an application, the district court must ensure that the application contains all of the requirements listed in 50 U.S.C. §§ 1804 and 1823. In reviewing the procedural check list, the court's emphasis falls on the requirement that the application be accompanied by the certification of a high-ranking official. 50 U.S .C. §§ 1804(6) and 1823(6).

Like the application itself, the "certification is ... subjected to only minimal scrutiny by the courts." *Mohammad*, 339 F. Supp. 3d at 736 (citing *United States v. Badia*, 827 F.2d 1458, 1463 (11th Cir. 1987). The certification is used to ensure that a significant

5

purpose of the surveillance or search is to ob tain foreign intelligence information. 50 U.S.C. §§ 1804(a)(6)(B) and 1823(a)(6)(B). The FISA judge, reviewing the initial application "is not to second-guess the executive branch official's certification that the objective of the surveillance is foreign intelligence information." *Id.* (quoting *United States v. Duggan*, 743 F.2d 59, 77 (2nd. Cir. 1984)) . Similarly, "when a person affected by a FISA surveillance [or search] challenges the FISA Court's order, a reviewing court is to have no greater authority to second-guess the executive branch's certifications than has the FISA Judge...." *Id.* In all, the Government's application for a FISA order, and the certification of a high-ranking official accompanying it, are given substantial deference and only receive minimal scrutiny when reviewed by the district court.

**2. Standard of Review Applicable to FISA Orders.**

Upon a defendant's motion to suppress pursuant to 50 U.S.C. §§ 1806(e) and 1825(f), a district court must also review the FISA order authorizing the surveillance or search and more specifically, the FISA Judge's determination of probable cause. The Court must find that the FISA order contained a finding of probable cause by the FISA judge that the target of the surveillance or search is a foreign power or agent of a foreign power and that the facilities or places at which the surveillance is directed or the premises or property to be searched is or is about to be owned, used, possessed by, or is in transit to or from a foreign power or agent of a foreign power. 50 U.S.C. §§ 1805(a)(2) and 1824(a)(2). Unlike the FISA application, however, the FISA judge's probable cause determination is reviewed *de novo* by the district court upon a defendant's motion to suppress. *See Mohammad*, 339 F. Supp. 3d at 736. *See also United States v. Hassan*,

6

742 F.3d 104, 138–39 (4th Cir. 2014) (stating that the district court reviewed the probable cause determinations de novo in accordance with the Fourth Circuit's precedent).

### C. Analysis of the Legality of the FISA Materials in the Present Case.

Defendant moves pursuant to 50 U.S.C. §§ 1806(e) and 1825(f) to discover and/or suppress all FISA materials including any evidence derived from or relating to any electronic surveillance or physical searches conducted against him as authorized by order of the FISC. The Government opposes Defendant's motion and has submitted an affidavit of the United States Attorney General declaring that any disclosure of or hearing on these matters will harm the national security of the United States.

As a result of the Attorney General's affidavit, the Court conducted an *in camera* and *ex parte* review of the FISA materials. This review included all of the FISA warrant applications, orders, and related documents and exhibits. Based on that review, the Court finds that: (1) the FISA applications complied with the statutory requirements, and (2) the FISA orders satisfied the statutory requirements and were based on probable cause. More specifically, after conducting its *in camera* and *ex parte* review, the Court makes the following findings:

(i) the Court finds that each FISA application contained the requirements set forth in 50 U.S.C. § 1084 and 1823.

(ii) the Court finds that the applications contained a statement of the proposed minimization procedures and a certification by a high-ranking official and that the proposed minimization procedures are those previously proposed by the Attorney General and approved of by the FISC.

(iii) The Court finds that a "significant purpose" of the surveillance or search was to obtain "foreign intelligence information."

(iv) And the Court finds that the FISA applications for electronic surveillance or physical search complied with the FISA application statutes.

As such, the Court finds no error in the applications or accompanying certifications, and where the applications are procedurally accurate, the Court's inquiry is complete.

In addition, after conducting its *ex parte* and *in camera* review, the Court finds that the orders complied with the procedural requirements set forth in 50 U.S.C. §§ 1805 and 1824, and contained the necessary findings, specifications, and directions required by those sections. Moreover, the Court finds there was sufficient probable cause to believe that Defendant was "an agent of a foreign power" and that each of the facilities, places, premises, or property at which the electronic surveillance or physical search was directed was, or was about to be owned, used, possessed by, or was in transit to or from Defendant. See 50 U.S.C. §§ 1805(a)(2) and 1824(a)(2). Thus any argument based on the Government's failure to demonstrate probable cause, or that the Government was required to make a greater showing of probable cause, are without merit. The FISA orders contained the elements required by statute and were issued based on a valid finding of probable cause.

Finally, the Court turns to Defendant's argument that it is improper for the Government to use information discovered through a FISA warrant "for an entirely domestic prosecution." In other words, according to Defendant, it is improper to use FISA materials to prosecute a crime like food-stamp fraud that is not directly related to the defendant's alleged agency to a foreign power.

The Court recognizes the legitimacy of Defendant's Fourth Amendment concerns. And the Court echoes similar concerns raised by the Ninth Circuit in *United States v. Gartenlaub*:

> The idea that the government can decide that someone is a foreign agent based on secret information; on that basis obtain computers containing "[t]he sum of [that] individual's private life," *Riley v. California*, 573 U.S. 373, 134 S.Ct. 2473, 2489, 189 L.Ed.2d 430 (2014); and then prosecute that individual for completely unrelated crimes discovered as a result of rummaging through that computer comes perilously close to the exact abuses against which the Fourth Amendment was designed to protect. However, the district court did not commit plain error by concluding otherwise.

*United States v. Gartenlaub*, 751 F. App'x 998, 1000 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1609, 203 L. Ed. 2d 757 (2019). Yet notwithstanding this warning, in *Gartenlaub*, the Ninth Circuit approved the use of FISA-derived materials and found no Fourth Amendment violation occurred in connection with a non-national security related prosecution for possession of child pornography. *Id.*

Here, Defendant presents no authority supporting the notion that FISA materials cannot be used in an entirely domestic criminal prosecution, and the Court is aware of none. In fact, the case law appears to be in opposite. *See Gartenlaub*, 751 F. App'x at 998. Thus under the circumstances presented here, where the clear purpose of the surveillance was to obtain foreign intelligence information and there is no indication of an intent to uncover information about what the Defendant describes as "domestic crimes", the Court finds that Defendant fails to establish a violation of the Fourth Amendment.

### III. CONCLUSION

For the above-stated reasons, Defendant's motions are **DENIED**.

**SO ORDERED.**

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: December 24, 2020

9

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 24, 2020, by electronic and/or ordinary mail.

<u>s/Lisa Bartlett</u>
Case Manager
